**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SANDY MARISOL MERCADO,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-CV-2123-WBS-DMC<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' briefs on the merits, ECF Nos. 10 and 19.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Court recommends the Commissioner's final decision be affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |

Step 5 If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on January 14, 2022. See CAR 17.[1] In the application, plaintiff claims disability began on October 17, 2021. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on April 9, 2024, before Administrative Law Judge (ALJ) T. Kim. In a September 9, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): obesity; multiple fracture left hand; thoracic spine spondylosis; left ring finger and little finger trigger finger; degenerative disc disease of the lumbar spine; and boutonniere deformity of the finger of the left hand;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: the claimant can perform light work; the claimant can frequently operate hand controls, reach, push, pull, handle, finger, and feel with the left non-dominant upper extremity; the claimant can occasionally kneel, crouch, stoop, balance, and crawl, and she can occasionally climb stairs and ramps; the claimant can never climb ladders, ropes, and scaffolds; the claimant can never be exposed to unprotected heights and moving mechanical parts; the claimant can tolerate occasional exposure to vibration; the claimant can understand, carry out, and remember simple instructions ,and use judgment to make simple work-related decisions;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 20-27.

After the Appeals Council declined review on June 23, 2025, this appeal followed.

/ / /

/ / /

/ / /

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on September 25, 2025, ECF No. 9.

**III. DISCUSSION**

In her opening brief, Plaintiff argues: (1) the ALJ erred by failing to evaluate the opinions of Plaintiff's treating physician, Joel Frazier, M.D.; and (2) the ALJ erred in evaluating Plaintiff's subjective statements and testimony. See ECF No. 10, pg. 2.

**A. Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other

factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ evaluated medical opinions from the following sources: (1) state agency consultants, Lawrence Schaffzin, M.D., and William Backlund, M.D.; (2) internal medicine consultative examiner, Satish Sharma, M.D.; and (3) Alfayo Michira, a physician's assistant. See CAR 25-26. The ALJ found the opinions of Drs. Schaffzin, Backlund, and Sharma, who all opined that Plaintiff is capable of light work, to be "somewhat persuasive," but found the opinions offered by Alfayo Michira to be "not persuasive." Plaintiff raises no arguments as to the ALJ's evaluation of the opinions of Drs. Schaffzin, Backlund, Sharma, or physician's assistant Michira.

According to Plaintiff, she sought treatment for her hand impairment with Dr. Frazier, who provided multiple medical opinions. See ECF No. 10, pg. 11. Plaintiff argues the ALJ erred by not considering Dr. Frazier's opinions. See id. at 11-13. Plaintiff states that Dr.

Frazier's opinions are found in the record at CAR 446, 458, 627, 643, 663, 673, and 682. See id. at 11.

The record at CAR 446 is page 6 of 24 of Exhibit 3F, which consists of medical records from Dr. Frazier. See CAR 446. CAR 446 is the first page of an October 19, 2021, progress note and does not reflect any medical opinion. See id. The record at CAR 458 is page 18 of Exhibit 3F. See CAR 458. This document is the second page of progress notes from February 22, 2022, and reflects no medical opinion offered by Dr. Frazier. See id. The record at CAR 627 is page 14 of 90 of Exhibit 9F, which consists of additional medical records from Dr. Frazier. See CAR 627. CAR 627 is the last page of progress notes from January 4, 2023. See id. Again, neither this page nor the rest of the January 4, 2023, progress notes reflect any medical opinion offered by Dr. Frazier, except for the notation that Plaintiff "will return to work, starting with half work day." See id. at 626-27. The record at CAR 643 is page 29 of 90 of Exhibit 9F. See CAR 643. The document is the second page of a progress note from October 5, 2022, prepared by Dr. Frazier. See id. Dr. Frazier does not provide any medical opinions except to note that "[a] work note was provided until the end of October." Id. The record at CAR 663 is page 50 of 90 of Exhibit 9F. See CAR 663. The document is the second page of a progress note from July 26, 2022, prepared by Dr. Frazier and expresses no medical opinion except Dr. Frazier states: "Off work from 7/26/2022 to 9/07/2022." Id. The record at CAR 673 is page 60 of 90 of Exhibit 9F. The document is the second page of a progress note prepared by Dr. Frazier on June 2, 2022. See id. Again, this document reflects no medical opinion offered by Dr. Frazier except the doctor notes that Plaintiff is "[n]ot able to turn to work from 06/02/2022 to 08/02/2022." Id. The record at CAR 682 is page 69 of 90 of Exhibit 9F and is the second page of progress notes from April 19, 2022, prepared by Dr. Frazier. See CAR 682. Again, other than stating that Plaintiff is "[o]ff work to 06/19/2022," Dr. Frazier offers no medical source opinion.

The Court does not agree that the ALJ committed error by failing to address Dr. Frazier. As the Commissioner notes, Dr. Frazier's various statements about Plaintiff being off work indicate that Plaintiff was unable to perform her past relevant work, not that Plaintiff could not perform any work. See ECF No. 19, pg. 5. The ALJ agreed that Plaintiff could not perform

past relevant work. See CAR 26. The Court also agrees with the Commissioner that the various statements from Dr. Frazier referenced by Plaintiff do not amount to medical opinions because Dr. Frazier did not note any functional limitations supporting his statements. Finally, while Dr. Frazier stated on multiple occasions that Plaintiff would work half days, the doctor did not provide a reason for this statement, nor did the doctor specifically state that Plaintiff could was limited to half work days.

Under the revised regulations, a "medical opinion" which must be considered is a "statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions. . . ." C.F.R. §§ 404.1513(a), 416.913(a). The statements by Dr. Frazier referenced in Plaintiff's brief do not constitute medical opinions which the ALJ would have been required to consider because, as discussed above, they were not statements as to what Plaintiff can do despite her hand limitations.

**B. Plaintiff's Subjective Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

In evaluating Plaintiff's subjective statements and testimony at Step 4, the ALJ first provided the following summary:

> The claimant alleged disability based on left hand injury and fracture of fingers, a lack of full mobility on the left hand, lower back problems, and compression fracture. (Ex. 3E). The claimant testified that she broke her non-dominant hand and underwent two surgeries. She testified that after using her hands, she has to rest hand for one hour before going back to use. In an Exertional Activities Questionnaire, the claimant reported that her left hand was very weak, and she did not have a full grip. She cannot close her hand completely. She has been going to therapy. She has to get the kids ready for school. She has difficulty with stairs. She cannot lift

> heavy objects and has no strength in her hands. (Ex. 1E). She does not use her left hand much and does not walk a lot. She usually avoids carrying anything heavy because her left hand cannot grip. She can drive. (Ex. 6E).
>
> CAR 22-23.

The ALJ concluded that Plaintiff's statements and testimony are "not entirely consistent" with the medical evidence and other evidence of record. CAR 23. The ALJ then outlined a longitudinal summary of the objective medical evidence and findings. See id. at 23-24. The ALJ concluded as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent. The claimant reported weakness and poor grip with her left hand, stating she cannot use her left hand much. (Ex. 1E, 6E). At the consultative examination, the claimant had full strength in the upper extremities and good coordination of fine motor movement of the fingers of both hands. (Ex. 5F). Additionally, in December 2022 and January 2023, the claimant reported improvement in her 4th and 5th finger pain and function. (Ex. 9F/16, 10F/39, 43). She reported that she was performing daily activities with improvement. She had a bilateral grip strength of 30 pounds and intact sensation. (Ex. 10F/43). The claimant also reported that she does not walk a lot. (Ex. 6E). However, at the consultative examination, the claimant had a normal gait and full strength in the lower extremities. (Ex. 5F). Therefore, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence.
>
> CAR 24-25.

Plaintiff argues that the ALJ's analysis amounts to nothing more than boilerplate language which fails to provide specific, clear, and convincing reasons linking specific evidence to specific testimony found to be inconsistent. See ECF No. 10, pg. 10. The Court does not agree. Contrary to Plaintiff's argument, the ALJ linked specific limitations asserted by Plaintiff to inconsistent objective medical evidence. For example, the ALJ noted that, while Plaintiff complained that she could not use her left hand, objective findings showed good coordination of fine motor movement of both hands as well as bilateral grip strength of 30 pounds with intact sensation. Similarly, despite Plaintiff's complaint that she cannot walk much, objective findings showed that Plaintiff had normal gait and full strength in the lower extremities. The Court agrees

with the Commissioner that the ALJ's analysis was legally appropriate and supported by substantial evidence of record.

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment, ECF No. 10, be denied;

2. Defendant's cross-motion for summary judgment, ECF No. 19, be granted; and

3. The Commissioner's final decision be affirmed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 24, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE